IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PATRICK PIZZELLA[1],        :

   Plaintiff,                :

v.                          :        Civil Action No. GLR-18-2933

LOIS PETERS, et al.,        :

   Defendants.              :

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Lois Peters, Frank Dickerson, International Health Care Consultants, Inc. ("IHC Consultants"), Cedar Lane Senior Assisted Living Facility, Inc. ("Cedar Lane"), and Ashleigh's Senior Assisted Living, Inc.'s ("Ashleigh's") Defendants' Motion to Dismiss the Secretary's Complaint (ECF No. 10). The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will deny the Motion.

### I.    BACKGROUND[2]

Peters is a registered nurse, the president of IHC Consultants, and the owner and manager of four group homes that provide assisted-living services to the elderly in Maryland. (Compl. ¶ 2, ECF No. 1). The group homes are: (1) Astoria House in Fulton, Maryland; (2) Astoria II in Columbia, Maryland; (3) Golden Years Assisted Living in

---

[1] On July 20, 2019, Patrick Pizzella became Acting Secretary of Labor. Accordingly, the Court substitutes Pizzella for R. Alexander Acosta. See Fed.R.Civ.P. 25(d).

[2] Unless otherwise noted, the Court takes the following facts from the Secretary's Complaint (ECF No. 1) and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).

Mount Airy, Maryland; and (4) Ashleigh's Place in Columbia, Maryland. (Id.). Dickerson is vice president of IHC Consultants and, like Peters, manages the group homes. (Id. ¶ 3). Both Peters and Dickerson hire and fire employees, set their work schedules and compensation, distribute weekly payroll, and supervise employees day-to-day. (Id. ¶¶ 7–8). Peters "regularly" visits the group homes, while Dickerson visits them "several times each week to check on their books [and tell] the employees how to perform their work." (Id.). IHC, whose registered office is a house in Clarksville, Maryland, operates the group homes. (Id. ¶ 4). Cedar Lane, whose registered office is a house in Columbia, Maryland and was incorporated by Peters in October 2017, operates Astoria II. (Id. ¶ 5). Ashleigh's, whose registered office is a house in Columbia and was incorporated by Peters in October 2017, operates Ashleigh's Place. (Id. ¶ 6).

Defendants employed at least twenty-seven people from September 19, 2015 through at least September 20, 2017 as Caregivers and Medication Technicians. (Id. ¶ 11; id. Sched. A ["Employee List"]). Defendants paid the Caregivers and Medication Technicians a day rate "purportedly for twelve hours of work per day, typically from 6:00 a.m. to 6:00 p.m., or from 7:00 a.m. to 7:00 p.m." (Id. ¶ 12). Defendants paid some employees $65.00 per day and others $80.00 per day. (Id.). Defendants "required many of the Caregivers and Medication Technicians to stay overnight at the group homes, scheduling them for shifts ranging from five to fifteen consecutive days, e.g., Monday at 6am through Saturday at 6am." (Id. ¶ 13). During the overnight shifts, the employees had to "respond to the needs of the elderly residents, many of whom suffered from dementia, whenever such needs arose," which meant they were interrupted several times each night.

2

(Id.). Defendants did not provide private space for the employees when they stayed overnight, which prevented them from getting adequate sleep or enjoying private leisure activities. (Id.). During these overnight shifts, the employees were not paid beyond the day rate. (Id.). When they worked more than forty hours per week, they were not paid at a higher overtime rate. (Id. ¶¶ 14–15).

On September 21, 2018, Plaintiff U.S. Secretary of Labor Alexander Acosta (the "Secretary") sued Defendants. (ECF No. 1). The Secretary alleges that from September 19, 2015 through at least September 20, 2017, Defendants willfully: (1) failed to compensate employees at the statutory hourly minimum required by Section 6 of the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. § 201 et seq. (2018); (2) failed to compensate employees at the proper overtime rate for hours worked in excess of forty hours per week pursuant to Sections 7 and 15(a)(2) of the Act; (3) failed to provide any compensation for mandatory overnight shifts; and (4) failed to make, keep, and preserve adequate and accurate records of employee hours pursuant to Sections 11(c) and 15(a)(5) of the Act. (Id. ¶¶ 11–17). The Secretary seeks unpaid minimum wage and overtime compensation, as well as liquidated damages, pursuant to Section 16(c) of the Act and an injunction to prevent Defendants from further violating the FLSA pursuant to Section 17 of the Act. (Id. at 7–8).

On November 21, 2018, Defendants filed their Motion to Dismiss the Secretary's Complaint. (ECF No. 10). On December 19, 2018, the Secretary filed an Opposition. (ECF No. 18). On January 16, 2019, Defendants filed a Reply. (ECF No. 19).

## II. DISCUSSION

### A. Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of America, N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of America, NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268

(1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.     Analysis**

Defendants argue that the Complaint, or some part thereof, should be dismissed for several reasons, including that it fails to meet the pleading standard under Twombly and Iqbal because its allegations are conclusory and not specific enough. The Secretary counters that he has pleaded enough details to allow the Court to infer Defendants are liable. The Court will examine the arguments in turn.

**1.     Single Enterprise and Covered Employer**

Defendants argue that they are not a single enterprise or a covered employer under the Act, whereas the Secretary argues that Defendants are. The Court agrees with the Secretary.

Under the FLSA, an "enterprise" consists of "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units . . . ." 29 U.S.C. § 203(r)(1) (2018). For separate entities to qualify as a "single enterprise" under the Act, they must make a three-part showing: (1) "the entity or entities must engage in 'related activities'"; (2) "performed through 'unified operation' or 'common control'"; (3) "for a

5

common business purpose." Dole v. Odd Fellows Home Endowment Bd., 912 F.2d 689, 692 (4th Cir. 1990) (citing Brock v. Hamad, 867 F.2d 804, 806 (4th Cir. 1989) (per curiam)).

Here, the Complaint alleges Defendants all operate group homes that provide assisted living services for elderly residents, meeting the "related activities" prong of the Fourth Circuit's test. Next, the Complaint alleges that Peters owns and manages the Corporate Defendants and the group homes and that Dickerson is intimately involved in the management of the group homes, their employees, and their finances. Third, per the pleadings, Defendants have the common business purpose of operating the group homes. Accordingly, Defendants constitute a single enterprise under FLSA.

The FLSA provides that a covered employer is one that "is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, or the mentally ill or defective who reside on the premises of such institution." 29 U.S.C. § 203(s)(1)(B). While Defendants argue that the Secretary merely mimicked the statutory language, the Complaint sufficiently establishes that the Defendants "operate 'group homes that provided assisted living services to elderly residents,' many of whom [suffer] from dementia." (Compl. ¶¶ 2, 13). As a result, Defendants are covered employers under the Act.[3]

---

[3] Because the Court finds that Defendants operate an enterprise covered under 29 U.S.C. § 203(s)(1)(B), it need not consider the parties' arguments concerning § 203(s)(1)(A) coverage.

### 2. Connection of Claims to Individual Employees

Next, Defendants argue that the Secretary's minimum wage and overtime claims do not meet the Rule 8 pleading standard. The Secretary counters that he does. The Court ultimately agrees with the Secretary.

Considering the issue of overtime claims recently, the United States Court of Appeals for the Fourth Circuit weighed competing approaches to the FLSA pleading standard and chose the more liberal approach. Hall v. DIRECTV, LLC., 846 F.3d 757, 776 (4th Cir. 2017). The Fourth Circuit concluded that a plaintiff "must provide sufficient factual allegations to support a reasonable inference that he or she worked more than forty hours in at least one workweek and that his or her employer failed to pay the requisite overtime premium." Id. at 777. While this standard does not give plaintiffs license to merely allege overtime in "some or all workweeks," neither does it require plaintiffs name the particular weeks in which violations occurred. Id. "Rather, this standard is intended to 'require plaintiffs to provide some factual context that will 'nudge' their claim from conceivable to plausible.'" Id. (quoting Dejesus v. HF Mgmt. Servs., LLC., 726 F.3d 85, 90 (2nd Cir. 2013)). The Fourth Circuit acknowledged the difficulty of pleading precise scheduling and wages because "most (if not all) of the detailed information concerning a plaintiff-employee's compensation and schedule is in the control of the defendants" at the pleading stage. Id. at 776 (citing Pruell v. Caritas Christi, 678 F.3d 10, 15 (1st Cir. 2012)).

Here, the Secretary alleges adequate facts to pass this test. He pleads that the twenty-seven individuals listed in Schedule A typically worked twelve or more hours per day while being paid $65.00 or $80.00 no matter how many hours in the day or week they worked.

7

Further, the Secretary alleges that Defendants' payroll records show that employees regularly worked seven to fourteen days in a two-week period but were only paid straight time compensation after forty hours. The Secretary also alleges the Employees often worked five- to fifteen-day consecutive shifts, during which they were required to stay overnight in non-private quarters and care for residents who frequently interrupted their sleep. These facts, along with other specifics about the conditions under which the Employees worked for at least two years, nudges the Complaint from conceivable to plausible and provides notice to Defendants of the claims against them.

The district court cases Defendants cite are either outside the Fourth Circuit or distinguishable. In Harris v. Jie, the Secretary also named the employees who had allegedly not been paid properly in an exhibit, but the district court concluded the complaint was "devoid of any specific facts related to employees" and granted the defendants' motion to dismiss. Civ. No. 2:13-cv-00877, 2013 WL 4675990, at *2–3 (W.D.Wash. Aug. 30, 2013). Here, there are specific facts related to employees, including the time period involved and estimates of the deficient compensation, which gives Defendants more notice than the Harris defendants had. Further, opinions of the U.S. District Court for the Western District of Washington do not bind this Court. In Perez v. Sanchez, the complaint alleged FLSA violations regarding "certain" listed workers, and the U.S. District Court for the District of South Carolina concluded that, even combined with alleged record-keeping violations, a plaintiff cannot "simply allege that an employer violated the Act without providing any details." Civ. No. 6:14-cv-4326, 2016 WL 721032, at *2 (D.S.C. Feb. 24, 2016). The Court is not persuaded Perez dictates the result here for at least three reasons: (1) the Secretary

8

has pleaded details here; (2) an unpublished opinion from another district court in the Fourth Circuit is not binding; and (3) the district court in Perez only granted the alternative relief those defendants sought in their motion—a more definite statement, rather than dismissal—which is not relief Defendants in this case have requested.

Further, in Acosta v. Valley Hotel, the Middle District of Pennsylvania denied a motion to dismiss a complaint in which the Secretary alleged that the defendants "employ[ed] certain of their employees . . . without compensating said employees . . . at rates not less than $7.25 per hour." No. 4:17-CV-00113, 2017 WL 6311852, at *4 (M.D.Pa. Dec. 11, 2017). Here, the Secretary states that "Defendants required many Caregivers and Technicians to stay overnight," during which times their sleep was interrupted with work, and yet Defendants paid "some employees . . . day rates of $65 per day, purportedly for twelve hours of work, which is less than $5.42 per hour [and] paid other employees $80.00 per day . . . which is less than $6.67 per hour." (Compl. ¶¶ 12–13).[4]

In sum, the Court concludes that the Secretary's minimum wage and overtime claims meet the Rule 8 pleading standard.

### 3. Hours Worked

Defendants assert that the DIRECTV Court held that "there must be an allegation as to the number of hours actually worked by each employee." (Defs.' Reply at 10, ECF

---

[4] The Secretary also cites Chao v. Rivendell Woods, in which the Fourth Circuit reversed the dismissal of the Secretary's complaint on the grounds that it did not plead overtime violations for each specific employee. 415 F.3d 342, 349 (4th Cir. 2005). But as the Fourth Circuit decided Rivendell Woods pre-Twombly, the Court instead looks to DIRECTV for guidance on the relevant pleading standard.

9

No. 19). The Secretary maintains that Defendants misconstrue the rule in DIRECTV. The Court agrees with the Secretary.

In DIRECTV, the Fourth Circuit held that "[a] plaintiff <u>may</u> meet [the] initial [pleading] standard by estimating the length of her average workweek during the applicable period and the average rate at which she was paid, the amount of overtime wages she believes she is owed, or <u>any other facts</u> that will permit the court to find plausibility." 846 F.3d at 777 (emphases added). The Fourth Circuit cited <u>Davis v. Abington Memorial Hospital</u>, in which the Third Circuit held that "a plaintiff's claim that she 'typically' worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours he or she worked during one or more of <u>those</u> forty-hour weeks, would suffice." 765 F.3d 236, 243 (3rd Cir. 2014).

Here, the Secretary states that "Defendants required many Caregivers and Medication Technicians to stay overnight at the group homes, scheduling them for shifts ranging from five to fifteen consecutive days . . . The day rate was intended to cover only [twelve] hours of work during the daytime, such as between 7:00am and 7:00pm, and the remaining [twelve] hours were unpaid. During the [twelve] unpaid hours, many Caregivers and Medication Technicians were required to respond to the needs of the elderly residents . . . whenever such need arose." (Compl. ¶ 13). In addition, "Defendants' payroll records show frequent examples of employees working seven to fourteen days per two-week pay period, purportedly working [twelve] hours per day. This equates to, at a minimum, [four] to [eighty-eight] hours of overtime worked in a two-week period." (Id. ¶15).

10

Defendants assert that the details in the DIRECTV complaint establish a minimum standard for all FLSA pleadings in the Fourth Circuit. But the rule from DIRECTV stated above makes clear what is required at the pleading stage. Under the DIRECTV standard quoted above, and closely matching the facts from Davis, the Secretary has pleaded sufficient facts with regard to the employees' hours worked.

### 4. Overnight Work

Defendants argue that the Secretary does not adequately plead that employees were working overnight or that their work was compensable, citing a U.S. Department of Labor ("DOL") regulation that creates a rebuttable presumption that employees are not working during nighttime hours. The Secretary counters that the employees were not living at the group homes but rather working overnight shifts at the homes. At this stage of the litigation, the Court agrees with the Secretary.

The U.S. Supreme Court set out the standard for determining if overnight time is compensable in Skidmore v. Swift, requiring district courts to examine several factors to determine if the employee is "engaged to wait," which is compensable, or "waiting to be engaged," which is not compensable. See Myers v. Baltimore Cty., 50 F.App'x 583, 587 (4th Cir. 2002) (citing Skidmore, 323 U.S. 134, 136–137 (1944)). When determining whether "waiting time" is compensable work under the FLSA, the Supreme Court concluded that "[w]hether in a concrete case such time falls within or without the Act is a question of fact to be resolved by appropriate findings of the trial court." Skidmore, 323 U.S. at 136–37 (citing Walling v. Jacksonville Paper Co., 317 U.S. 564, 572 (1943)). The DOL's regulation regarding "[e]mployees residing on employer's premises or working at

home" (the "Regulation") provides that "[a]n employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises." 29 C.F.R. § 785.23 (2018). The Regulation then qualifies that general rule:

> Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable agreement of the parties which takes into consideration all of the pertinent facts will be accepted.

Id. Further, the Fourth Circuit has held that the FLSA is "'remedial and humanitarian in purpose' reflecting an intent by Congress to protect broadly the 'rights of those who toil.'" Morrison v. Cty. of Fairfax, 826 F.3d 758, 761 (4th Cir. 2016) (quoting Tenn. Coal, Iron & R.R. v. Muscoda Local No. 123, 321 U.S. 590, 597 (1944)). Courts should, therefore, "construe the FLSA liberally, 'recognizing that broad coverage is essential' to accomplish the statute's goals." Id. (quoting Tony & Susan Alamo Found. v. Sec'y of Labor, 471 U.S. 290, 296 (1985)). To that end, FLSA exemptions should be "'narrowly construed against the employers seeking to assert them' and applied only in instances 'plainly and unmistakably within the exemptions' terms and spirit.'" Id. (citing Desmond v. PNGI Charles Town Gaming L.L.C., 564 F.3d 688, 692 (4th Cir. 2009)).

Here, the Secretary alleges that "Caregivers and Medication Technicians were required to respond to the needs of the elderly residents, many of whom suffered from dementia, whenever such needs arose." (Compl. ¶ 13). Further, "Defendants did not provide private space for the employees when they stayed overnight, which prevented them

from getting adequate sleep or enjoying private leisure activities. (Id. ¶ 12). Even if the Regulation applies, these allegations rebut its presumption that subject employees "may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when [they] may leave the premises for purposes of [their] own." 29 C.F.R. § 785.23. They also underscore why the ultimate resolution of this issue is a question of fact. See Skidmore, 323 U.S. at 136–37.

In light of the FLSA's purpose, the command to narrowly construe exemptions, and the allegations in the Complaint, the Court concludes that the Secretary has plausibly pleaded that the employees' overnight hours may be compensable. Defendants are, of course, welcome to raise this issue again in a motion for summary judgment. See Myers, 50 F.App'x at 587 (granting summary judgment to defendants because the Secretary's evidence did not overcome the presumption against compensability).

### 5. Continuing Violations

Defendants contend that the Secretary's allegations of violations after September 20, 2017 should be dismissed because he has not alleged specific events. The Secretary counters that limiting damages to those arising from the investigative period would require him to file new complaints until the Defendants comply with the law, which is impractical. The Court agrees with the Secretary.

The Fourth Circuit has held that FLSA plaintiffs may seek damages for continuing violations outside of the original investigation period under Section 17 of the Act. Chao

13

v. Self Pride, Inc., No. CIV. RDB 03-3409, 2006 WL 469954, at *3 n.5 (D.Md. Jan. 7, 2006), aff'd, 232 F.App'x 280 (4th Cir. 2007).

Though the Secretary does not identify any specific events after the two-year investigative period, he requests any damages that "may also be owed to certain current and former employees . . . for violations continuing after September 20, 2017." (Compl. at 8). Further, requiring the Secretary to amend his Complaint continually would be impractical, and the Court sees no reason to impose such a burden on the Secretary in this case. See Self Pride, Inc., 2006 WL 469954, at *3 n.5.

### 6. Individual Defendants as Employers under the FLSA

Defendants argue that the Secretary does not plead sufficient facts to satisfy the Fourth Circuit's multi-factor test for whether an individual is an employer under the FLSA. The Secretary maintains he has pleaded sufficient facts to pass the controlling test. At this stage, the Court agrees with the Secretary.

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). In the Fourth Circuit, courts determine whether an individual is an "employer" using the "economic reality test," which examines whether the alleged employer: (1) "had the power to hire and fire the employees"; (2) "supervised and controlled employee work schedules or conditions of employment"; (3) "determined the rate and method of payment"; and (4) "maintained employment records." Kerr v. Marshall Univ. Bd. of Governors, 824 F.3d 62, 83 (4th Cir. 2016) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999)). The Court may also consider the individual's job description and "financial interest in the

enterprise." McFeeley v. Jackson St. Entm't, LLC, 47 F.Supp.3d 260, 274 (D.Md. 2014) (first quoting Gionfriddo v. Jason Zink, LLC, 769 F.Supp.2d 880, 890 (D.Md. 2011); and then citing Roman v. Guapos III, Inc., 970 F.Supp.2d 407, 416 (D.Md. 2013), aff'd, 825 F.3d 235 (4th Cir. 2016)). No one factor is dispositive; rather, the Court considers the totality of the circumstances. Kerr, 824 F.3d at 83.

Here, the Secretary alleges facts about Peters and Dickerson that relate to each element of the Kerr test, thereby meeting the FLSA's broad definition of employer. As president of IHC Consultants, Peters "owns and manages" the group homes, has the power to hire and fire employees, distributes weekly payroll, and conducts daily supervision. (Id. ¶ 7). As vice president of IHC Consultants, Dickerson also conducts near-daily supervision and reviews the accounting records of the group homes. (Id. ¶¶ 3, 8). Like Peters, he tells the employees how to perform their work and controls their scheduling and payroll. (Id.).

Nevertheless, Defendants argue the Secretary's claim should fail, citing the First Circuit's decision in Manning v. Boston Medical Center Corporation, 725 F.3d 34 (1st Cir. 2013) and the Eastern District of Pennsylvania's decision in Richardson v. Bezar, Civ. No. 15-cv-0772, 2015 WL 5783685 (E.D.Pa. Oct. 5, 2015). The Court declines to follow the more exacting standard set out by those courts. As noted, the Supreme Court has directed courts to construe the FLSA liberally because "broad coverage is essential to accomplishing the statute's goals" of protecting workers' rights. Morrison, 826 F.3d at 761 (quoting Tenn. Coal, 321 U.S. at 597). The facts the Secretary has pleaded with respect to Peters and Dickerson allow the Court, at this stage, to plausibly infer that their active involvement in the group homes makes them employers under the FLSA.

15

**7. Willfulness**

Defendants ask the Court to reconsider its recent decision in Rose v. Harloe Mgmt. Corp., No. CV GLR-16-761, 2017 WL 193295 (D.Md. Jan. 17, 2017), and dismiss the Secretary's willfulness claims. The Secretary urges the Court to uphold the willfulness claims. The Court agrees with the Secretary.

Rule 9 provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed.R.Civ.P. 9(a). In Rose, the Court held that willfulness is not an element of a plaintiff's claim but rather an anticipation of a limitations defense. 2017 WL 193295, at *4. As Defendants note, this Court has held similarly in other cases. See Ford v. Karpathoes, Inc., Civ. No. 14-cv-00824, 2014 WL 6621997, at *9 (D.Md. Nov. 20, 2014); Aviles-Cervantes v. Outside Unlimited, Inc., 276 F.Supp.3d 480, 490–91 (D.Md. 2017); see also Aguilar v. ALCOA Concrete & Masonry, Inc., Civ. No. 15-cv-0683, 2015 WL 6756044, at *2 (D.Md. Nov. 4, 2015).

While the Court acknowledges the contrary authority Defendants cite, none of it is binding on this Court, and the Court is not persuaded it should reconsider its decision in Rose. As a result, the Court will deny Defendants' Motion with respect to willfulness.

**8. Record-keeping**

In an argument that echoes the "Overnight Work" discussion, Defendants assert that the employees reside on the premises and that Defendants are therefore exempt from keeping hourly records under § 11(c) of the FLSA. Defendants rely on the Regulation and a DOL guidance document which states that employees "reside" on the premises when they "[work] and [sleep] there for five days a week (120 hours or more) or five consecutive days

16

or nights." U.S. Dept. of Labor, Wage and Hour Div., Field Assistance Bulletin No. 2016-1 (Apr. 25, 2016). The Secretary contends that the employees do not reside on the premises and that the applicability of the Regulation is a fact-intensive determination that would be premature at this stage of the litigation. The Court agrees with the Secretary.

Given the Secretary's allegations that employees work five- to fifteen-day shifts, the DOL guidance and Regulations may apply here. But, as Defendants note, determining whether an employee's sleeping area is private requires an examination of the specific circumstances. Here, the Secretary alleges that the sleeping areas are not private and, in at least once instance, consisted of a chair in a public room. As noted, FLSA exemptions "are to be 'narrowly construed against the employers seeking to assert them' and applied only in instances 'plainly and unmistakably within the exemptions' terms and spirit." Morrison, 826 F.3d at 761 (citing Arnold, 361 U.S. at 392). Furthermore, courts in the Fourth Circuit have decided the applicability of FLSA exemptions on summary judgment rather than a motion to dismiss because evidence is needed to determine if an exemption applies "plainly and mistakeably." Id. For the reasons described under Section B(4), "Overnight Work," (supra at 11–13), the Court will deny the Motion with respect to the recordkeeping claims, recognizing the possibility the Court will revisit the issue after discovery in this case.

In sum, while the Secretary's Complaint is not a model of clarity or a comprehensive accounting of the employees' work for Defendants, given the nature of the case, including the record-keeping issues alleged and the purpose of the FLSA, the Secretary has pleaded enough facts to make his claims plausible.

## III. CONCLUSION

For the foregoing reasons, the Court will deny Defendants' Motion to Dismiss the Secretary's Complaint (ECF No. 10). A separate Order follows.

Entered this 30th day of September, 2019.

                                                        /s/
                                       George L. Russell, III
                                       United States District Judge