IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MARTIN J. WALSH,[1] | * | |
|    Plaintiff/Counter-Defendant, | * | |
| v. | * | Civil Action No. GLR-18-2933 |
| LOIS PETERS, et al., | * | |
|    Defendants/Counter-Plaintiffs. | * | |
| | *** | |

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Motion to Dismiss Defendants' Amended Counterclaim filed by Plaintiff/Counter-Defendant Martin J. Walsh, Secretary of the U.S. Department of Labor (the "Secretary") (ECF No. 36).[2] The Motion is ripe for disposition and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will grant the Secretary's Motion.

---

[1] Martin J. Walsh was sworn in as Secretary of Labor on March 23, 2021. See U.S. Department of Labor, Office of the Secretary, https://www.dol.gov/agencies/osec (last visited Apr. 20, 2021). Accordingly, the Court will direct the Clerk to substitute Walsh for Eugene Scalia and Milton Al Stewart. See Fed.R.Civ.P. 25(d).

[2] Also pending before the Court are the Secretary's Motion to Dismiss Defendants' Counterclaims (ECF No. 34) and the Secretary's Motion to Begin Discovery on the Secretary's Claims (ECF No. 41). The original Motion to Dismiss was rendered moot when Defendants filed an Amended Counterclaim. (See ECF No. 35). The Court will therefore deny the Motion as moot. Similarly, because the Court will issue a scheduling order commencing discovery shortly after the Court grants the instant Motion to Dismiss, the Court will deny the Secretary's Motion to Begin Discovery as moot.

## I.   BACKGROUND[3]

This lawsuit alleges that Defendants/Counter-Plaintiffs International Health Care Consultants, Inc. ("IHCC"), Ashleigh's Senior Assisted Living, Inc. ("Ashleigh's"), Cedar Lane Senior Assisted Living Facility, Inc. ("Cedar Lane"), Lois Peters, and Frank Dickerson (collectively, "Defendants") violated the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), by failing to properly compensate their employees and maintain accurate records of employee hours. (See Compl. ¶¶ 11–17, ECF No. 1). According to the Complaint, IHCC acts as a sort of parent organization for several group homes that provide services for the elderly, whereas Cedar Lane and Ashleigh's are corporations engaged in the operation of specific group homes within the IHCC umbrella. (Id. ¶¶ 4–6). Peters owns the group homes, while Dickerson exercises closer oversight over their day-to-day management. (Id. ¶¶ 2–3, 7–8).

The U.S. Department of Labor ("DOL") began investigating IHCC in September 2017. (Am. Countercl. ¶ 10, ECF No. 35). According to Defendants, over the course of the investigation, DOL Investigator Oscar Blanco required IHCC "to go significantly beyond what is required to comply with the FLSA in order to close the investigation." (Id. ¶ 11). Blanco eventually determined that IHCC was violating the FLSA and required it to change its policies before he would close the DOL investigation. (Id. ¶ 12). In conjunction with a closing conference on February 14, 2018, DOL issued IHCC a Form WH-56 summary of

---

[3] Unless otherwise noted, the Court takes the following facts from Defendants' Amended Counterclaim and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

unpaid wages stating that Defendants owed their employees "$1,460,900.34 in purportedly unpaid wages and $1,460,900.34 in purported liquidated damages, for a total of $2,921,800.68." (Id. ¶ 13). DOL pressured Defendants to either sign the WH-56 or enter a tolling agreement, averring that if they declined to do so, DOL would seek civil penalties. (Id. ¶ 14).

Following the closing conference, DOL provided Defendants a spreadsheet detailing the basis for the figures presented in the WH-56. (Id. ¶¶ 17–18). The spreadsheet contained several errors, requiring DOL to rescind the initial WH-56 and issue a new one seeking "$802,278.78 in back pay and $802,278.78 in liquidated damages for a total of $1,604,557.56." (Id. ¶¶ 19–25). The updated figures, however, were rooted in additional errors. (Id. ¶¶ 27–28). Specifically, Defendants allege that DOL wrongly concluded that IHCC employees worked twenty-four hours per day. (Id. ¶¶ 29–64). Defendants state that this position disregarded controlling law and DOL's own regulations. (Id. ¶¶ 65–81).

On July 26, 2018, DOL sent a letter to Peters notifying her for the first time of a previous letter—which Defendants had never seen—assessing a civil monetary penalty of $16,716 on one or more Defendants. (Id. ¶¶ 84–85). In its July 26 letter, DOL notified Peters that it was withdrawing the penalty, but warned that its decision to do so did not preclude it from issuing a subsequent penalty. (Id. ¶¶ 86–87). On August 6, 2018, counsel for Defendants received another letter from DOL indicating that it was assessing a civil money penalty in the amount of $16,716. (Id. ¶¶ 88–89). In contravention of DOL regulations, the letter did not set forth the basis for assessing the penalty. (Id. ¶¶ 91–96). Defendants submitted a response on August 5, 2018, containing exceptions to DOL's

determination and requesting a hearing. (Id. ¶ 98). On August 22, 2018, DOL sent a letter directly to Peters indicating that it would notify her "as soon as the date, time, and place of a hearing had been determined." (Id. ¶ 99). DOL did not send any such notification, nor did it send any other correspondence to Defendants. (Id. ¶ 100). Instead, DOL filed the Complaint in this case on September 21, 2018. (Id. ¶ 103).

Defendants moved for dismissal of the Complaint on November 21, 2018. (ECF No. 10). By Memorandum Opinion and Order dated September 30, 2019, this Court denied the motion to dismiss. (ECF Nos. 20, 21). Defendants moved for reconsideration of the Court's Order, and the Court denied that motion on August 14, 2020. (ECF Nos. 22, 29).

On September 4, 2020, Defendants filed an Answer to the Complaint together with a Counterclaim against the Secretary alleging that DOL violated the Administrative Procedure Act, 5 U.S.C. §§ 551 et seq. ("APA"), through its actions preceding this lawsuit. (ECF No. 30). On October 16, 2020, the Secretary moved to dismiss the Counterclaim. (ECF No. 34). On October 29, 2020, Defendants filed an Amended Counterclaim once again alleging that DOL's actions violated the APA. (Am. Countercl. ¶¶ 104–12). Defendants seek declaratory and injunctive relief and attorneys' fees. (Id. at 19–20).

On November 12, 2020, the Secretary moved to dismiss the Amended Counterclaim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 36). Defendants filed an Opposition on December 4, 2020. (ECF No. 39). The Secretary filed a Reply on December 16, 2020. (ECF No. 40).

## II. DISCUSSION

### A. Standard of Review

#### 1. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. A defendant challenging a complaint under Rule 12(b)(1) may advance a "facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" Hasley v. Ward Mfg., LLC, No. RDB-13-1607, 2014 WL 3368050, at *1 (D.Md. July 8, 2014) (alteration in original) (quoting Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009)).

When a defendant raises a facial challenge, the Court affords the plaintiff "the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Kerns, 585 F.3d at 192 (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). As such, the Court takes the facts alleged in the complaint as true and denies the motion if the complaint alleges sufficient facts to invoke subject matter jurisdiction.

With a factual challenge, the plaintiff bears the burden of proving the facts supporting subject matter jurisdiction by a preponderance of the evidence. U.S. ex rel. Vuyyuru v. Jadhav, 555 F.3d 337, 347 (4th Cir. 2009). In determining whether the plaintiff has met this burden, the Court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991) (citing Adams, 697 F.2d at 1219).

Nevertheless, the Court applies "the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." Id. (citing Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1559 (9th Cir. 1987)). The movant "should prevail only if the material jurisdictional facts are not in dispute and the [movant] is entitled to prevail as a matter of law." Id. (citing Trentacosta, 813 F.2d at 1558). Unlike under the summary judgment standard, however, the Court is permitted to decide disputed issues of fact, Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009), and weigh the evidence, Adams, 697 F.2d at 1219.

"Sovereign immunity shields the United States from suit absent a consent to be sued that is 'unequivocally expressed.'" United States v. Bormes, 568 U.S. 6, 10 (2012) (quoting United States v. Nordic Vill., Inc., 503 U.S. 30, 33 (1992)). Sovereign immunity also applies to agencies and instrumentalities of the government, such as DOL. See Regents of Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997). Finding that the government has not consented to the suit at bar requires a court to dismiss the claim for lack of subject matter jurisdiction. Matter of Moore, 488 F.Supp.3d 231, 236 (D.Md. 2020) (citing Williams v. United States, 50 F.3d 299, 304–05 (4th Cir. 1995)).

### 2. Rule 12(b)(6)

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) (citation omitted)). A complaint fails to

state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

**B.     Analysis**

The Secretary contends that Defendants' Amended Counterclaim must be dismissed for lack of subject matter jurisdiction. "[F]ederal courts must assure themselves that they have jurisdiction before proceeding to the merits." City of New York v. U.S. Dep't of Def., 913 F.3d 423, 430 (4th Cir. 2019) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998)).

"Sovereign immunity is jurisdictional in nature" and "absent a waiver . . . shields the Federal Government and its agencies from suit." F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994). The Administrative Procedure Act, 5 U.S.C. §§ 551 et seq. ("APA"), "waives the federal government's sovereign immunity for a limited set of suits, brought by 'a person suffering legal wrong because of agency action' to obtain relief 'other than money damages.'" City of New York, 913 F.3d at 430 (quoting 5 U.S.C. § 702). Under the APA, "subject matter jurisdiction is lacking if the plaintiff fails to challenge a particular 'agency action' that is fit for review." Id. (citing Invention Submission Corp. v. Rogan, 357 F.3d 452, 460 (4th Cir. 2004)).

The following agency actions are subject to judicial review under the APA: (1) "[a]gency action made reviewable by statute; and (2) "final agency action for which there is no adequate remedy in a court." 5 U.S.C. § 704. Neither party argues that the agency actions at issue here are reviewable by statute. Accordingly, the Court must determine whether they constitute final agency actions for which there is no adequate remedy in a court. "[T]wo conditions must be satisfied for agency action to be 'final': First, the action must mark the consummation of the agency's decisionmaking process. . . . And second, the

action must be one by which rights or obligations have been determined, or from which legal consequences will flow." Bennett v. Spear, 520 U.S. 154, 177 (1997) (internal citations and quotation marks omitted).

Defendants identify the following actions as "final agency actions" subject to judicial review:

1. "issuing the WH-56";
2. "[issuing] the subsequent letters concerning civil money penalties"; and
3. "issu[ing] . . . its determination that: (1) IHCC and Ms. Peters were in violation of the FLSA; (2) IHCC must change the way it conducted business by ceasing to pay employees a legally permissible day rate; and (3) IHCC and Ms. Peters owed $1,604,557.56 in back wages and liquidated damages."

(Am. Countercl. ¶ 106). As set forth below, the Court finds that none of these constitute a final agency action for the purposes of waiving sovereign immunity under the APA and will therefore dismiss this case for lack of subject matter jurisdiction.

**1.     Form WH-56**

The Secretary argues that DOL's issuance of a WH-56 was not a final agency action because no legal consequences flowed from it "and, in fact, Defendants were free to ignore it entirely." (Mem. Supp. Mot. Dismiss Defs.' Countercl. ["Pl.'s Mem."] at 7, ECF No. 36-1). As the Secretary explains, "[b]ecause Defendants did not agree to pay the back wages and resolve the matter, the Secretary then filed this lawsuit asking this Court to determine the amount of back wages and liquidated damages Defendants owed to their employees and seeking other injunctive relief." (Id.).

Defendants argue that, in fact, legal and financial consequences did flow from the WH-56 in that it exposed them "to penalties for willful and repeated violations," adding that "at the closing conference the Department informed IHCC that if it did not sign the WH-56 or a tolling agreement it would seek civil money penalties." (Opp'n Mot. Dismiss ["Opp'n"] at 14, ECF No. 39). Defendants assert that the finality of the WH-56 was demonstrated by an email from Blanco stating that DOL "stand[s] by the facts and legal conclusions of the case." (Id. at 15). Defendants further maintain that they "have exhausted all avenues of contesting the unlawful WH-56 prior to filing this Counterclaim." (Id. at 16).

Defendants rely heavily on an unpublished decision by the United States District Court for the Southern District of Texas, Gate Guard Servs. L.P. v. Solis, No. CIV.A. V-10-91, 2011 WL 2784447 (S.D.Tex. July 12, 2011), in support of their position. In that case, the court found that "DOL's determination that Gate Guard: (1) is in violation of the FLSA; (2) owes more than $6 million in back wages to its gate attendants and service technicians: and (3) must classify and compensate its gate attendants as hourly employees going forward" were all final agency actions and therefore reviewable under the APA. Id. at *9. A later decision by that same court, however, held that DOL findings provided during a closing conference did not constitute a final agency action because DOL's "internal process was not complete." Tiga Logistics, LLC v. Perez, No. CV H-14-480, 2015 WL 12844451, at *3 (S.D.Tex. Mar. 27, 2015). Similarly, here, DOL declined to complete its internal process—i.e., scheduling and conducting an administrative hearing—prior to filing this lawsuit. (See Am. Countercl. ¶¶ 98–103).

10

Moreover, neither Gate Guard nor any of the other cases cited by Defendants find that agency investigative findings are final and reviewable during the pendency of a lawsuit brought by that agency. Instead, those cases were brought by companies proactively seeking a judicial determination that the agency's actions were incorrect or improper. Here, Defendants will have ample opportunity to make that showing in defending this lawsuit. See U.S. Army Corps of Eng'rs v. Hawkes Co., 136 S.Ct. 1807, 1815 (2016) (citing 5 U.S.C. § 704) ("[A]n agency action is reviewable under the APA only if there are no adequate alternatives to APA review in court.").[4]

Other courts have found that Form WH-56 and similar issuances do not constitute final agency actions. See, e.g., Perez v. Guardian Roofing, No. 3:15-CV-05623-RJB, 2016 WL 2595200, at *2 (W.D.Wash. May 5, 2016) ("Estimating an amount owed is tentative, not final."). Indeed, such preliminary determinations of back wages due are frequently the subject of subsequent deliberations between DOL and the targets of its investigations. See, e.g., Scalia v. Valley Hotel, Inc., No. 4:17-CV-00113, 2020 WL 263012, at *1 (M.D.Pa. Jan. 17, 2020); Dep't of Lab. v. EJ's Cleaning Servs., Inc., No. 4:19-CV-84-BD, 2020 WL

---

[4] Defendants argue that certain elements of their Amended Counterclaim will not be resolved through the Secretary's lawsuit. (See Opp'n at 6). Defendants cite (1) "the Secretary's effort in the WH-56 to go beyond its jurisdiction and assess state and local minimum wages"; (2) unspecified "further actions by the Secretary in violation of law and his own regulations"; and (3) "harassment of" Defendants into paying unwarranted wages and penalties. (Id.). Defendants assert they are entitled to an injunction against these actions. The Court disagrees that these issues will remain open following the disposition of this lawsuit, as they either describe subparts of the Secretary's allegations or outgrowths of DOL's conclusions of law that this action will necessarily resolve. Accordingly, the Court concludes this lawsuit presents an "adequate alternative[] to APA review in court." See Hawkes, 136 S.Ct. at 1815.

11

1432048, at *2 (E.D.Ark. Mar. 19, 2020). Even in this case, Defendants demonstrated the preliminary nature of the WH-56 when they identified an error that caused DOL to significantly revise its findings of back wages owed. (See Am. Countercl. ¶¶ 13–25).

The Court finds that the WH-56 issued in this case did not constitute a final agency action. As the Secretary writes, "the WH-56 form itself has no legal consequence, and Defendants are actively contesting their back wage liability in this litigation." (Reply Supp. Pl.'s Mot. Dismiss Defs.' Countercl. ["Reply"] at 9, ECF No. 40). Moreover, Defendants' concern that they could be subject to additional penalties due to their refusal to comply with DOL's findings and directives is too speculative to justify review under the APA. See City of New York, 913 F.3d at 431 ("It is not enough for plaintiffs to simply identify a governmental action that ultimately affected them through the independent responses and choices of third parties, or mere coercive pressures.") (internal quotation marks and citations omitted). More fundamentally, the Court finds that there is an adequate remedy to the agency's action in court—this very lawsuit. Accordingly, the Court finds that the Form WH-56 is not subject to review under the APA.

### 2. Civil Monetary Penalties

Defendants next argue that the civil monetary penalty ("CMP") issued by the Secretary constituted a final agency action. Under DOL regulations, however, CMPs are not final if the employer files an exception. See 29 U.S.C. § 216(e)(4) (providing that a CMP "shall be final, unless within 15 days after receipt of notice thereof . . . the person charged with the violation takes exception to the determination . . ., in which event final determination of the penalty shall be made . . . after opportunity for hearing"); 29 C.F.R. §

580.6(a) ("Any person desiring to take exception to the determination of penalty, or to seek judicial review, shall request an administrative hearing pursuant to this part."). Here, Defendants did file an exception to DOL's findings and requested an administrative hearing. (See Am. Countercl. ¶¶ 98–99).

Rather than proceeding with the hearing, the Secretary filed this lawsuit, "apparently elect[ing] to give the Court and the trier of fact the responsibility to decide whether [Defendants] violated FLSA." See Perez, 2016 WL 2595200, at *3. Under these circumstances, "DOL did not engage in final agency action." Id.; see also Am. Fin. Benefits Ctr. v. Fed. Trade Comm'n, No. 17-04817, 2018 WL 3203391, at *7 (N.D.Cal. May 29, 2018) (finding that agency filing a lawsuit did not constitute final agency action).[5] Because the CMPs were not finalized at the time this lawsuit was filed, have not been finalized since the filing of this lawsuit, and were not finalized by this lawsuit, they do not constitute a final agency action. In addition, the Court once again finds that this lawsuit provides a forum for an "adequate remedy" to the agency's action in a court. See 5 U.S.C.

---

[5] Defendants argue that the fact the Secretary filed a lawsuit does not negate the CMP's status as a final agency action because the Secretary is empowered to recover the proceeds of a CMP through the courts. See 29 C.F.R. § 580.18(b)(2) ("[T]he amount of the penalty, finally determined as provided in § 580.5, § 580.12 or § 580.16, may be . . . [r]ecovered in a civil action brought by the Secretary in any court of competent jurisdiction[.]"). In other words, Defendants argue, the regulatory regime "does not undermine the finality of such a decision by the agency; it merely gives the Secretary the right to enforce his final decision in court." (Opp'n at 19). This argument is not persuasive, however, for two reasons. First, in order to recover such a sum, the amount must have been "finally determined," which is not the case here. See 29 C.F.R. § 580.18(b). Second, the Secretary does not seek to recover a CMP through this lawsuit. (See Compl. at 7–8).

13

§ 704. Accordingly, the Court finds that the issuance of the CMP is not reviewable under the APA.

### 3. Issuing Determinations

Defendants finally argue that the Secretary undertook a final agency action by "issu[ing] . . . its determination that: (1) IHCC and Ms. Peters were in violation of the FLSA; (2) IHCC must change the way it conducted business by ceasing to pay employees a legally permissible day rate; and (3) IHCC and Ms. Peters owed $1,604,557.56 in back wages and liquidated damages." (Am. Countercl. ¶ 106). Defendants assert that these conclusions "imposed substantial financial repercussions upon IHCC [and] required significant changes in IHCC's business practices with significant penalties attached for non-compliance." (Opp'n at 17).

The Court is not persuaded. In order for a government action to be "one by which rights or obligations have been determined," see Bennett, 520 U.S. at 177, a plaintiff must show that it had "an immediate and practical impact or alter[ed] the legal regime in which it operates." City of New York, 913 F.3d at 431 (internal quotation marks and citations omitted). "It is not enough for plaintiffs to simply identify a governmental action that ultimately affected them through the independent responses and choices of third parties, or mere coercive pressures." Id. (internal quotation marks and citations omitted); see also Solar Turbines Inc. v. Seif, 879 F.2d 1073, 1081 (3d Cir. 1989) (finding that pre-enforcement review of agency action is not warranted "[e]ven though the wording of the administrative order is in the imperative and directs immediate compliance . . . and even though the accompanying letter seems to threaten civil and criminal liability upon

14

noncompliance"); Media Gen. Operations Inc. v. Herman, 152 F.Supp.2d 1368, 1377 (S.D.Ga. 2001) (finding that "the mere potential for future injury (thus injury that isn't imminent) in the form of liquidated damages is insufficient to render an issue ripe for review" and that if it were, "every employer's failure to comply with a DOL investigator's initial finding of non-compliance would support—upon that employer's reference to the mere threat of liquidated damages—disruptively intrusive judicial review"); Am. Fin. Benefits Ctr., 2018 WL 3203391, at *7 ("The challenged FTC actions—its investigation, decision to file a complaint, and filing of a complaint—are of an 'interlocutory nature.'").

As set forth above, the Form WH-56 and CMP did not constitute final agency actions. Accordingly, the determinations underlying those documents also were not final agency actions. To the extent Defendants argue that the Secretary's actions caused them to change their business practices for fear of future penalties, these are precisely the type of "coercive pressures" and "independent choices" the Fourth Circuit has found do not support a finding that an action constituted a final agency action. See City of New York, 913 F.3d at 431.

The Court has considered the decisions from other circuit courts cited by Defendants, Rhea Lana, Inc. v. Department of Labor, 824 F.3d 1023 (D.C. Cir. 2016), and West Illinois Home Health Care, Inc. v. Herman, 150 F.3d 659 (7th Cir. 1998). In both cases, appellate courts found that agency communications directing the plaintiffs to take certain steps to come into compliance with federal wage and hour laws constituted final agency actions because they could expose the plaintiffs to willful violation penalties down the road. See Rhea Lana, 824 F.3d at 1030; W. Ill. Home Health Care, 150 F.3d at 663.

Critically, these cases are distinguishable in that they were brought by companies proactively seeking a judicial determination that the agency's actions were incorrect or improper. Here, the Secretary filed this lawsuit seeking a judicial determination that the conclusions DOL reached during its investigation were lawful and accurate. Defendants will have ample opportunity to demonstrate that DOL's conclusions were in error in their defense of this lawsuit.

In the absence of express guidance from the Fourth Circuit, the Court views the filing of this lawsuit by the Secretary as solidifying the preliminary nature of DOL's earlier determinations. See City of Oakland v. Lynch, 798 F.3d 1159, 1166–67 (9th Cir. 2015) ("[The Government's lawsuit] simply makes evident the Government's intention to challenge the status quo; any rights, obligations, and legal consequences are to be determined later by a judge."). The Court therefore finds that those actions do not constitute final agency actions and are not reviewable under the APA. Finding that none of the challenged actions are final agency actions subject to review under the APA, the Court will dismiss Defendants' Amended Counterclaim for lack of subject matter jurisdiction. Given that Defendants already had the opportunity to amend, the Court will dismiss the Amended Counterclaim with prejudice.

### III. CONCLUSION

For the foregoing reasons, the Court will grant the Secretary's Motion to Dismiss Defendants' Amended Counterclaim (ECF No. 36). A separate Order follows.

Entered this 28th day of April, 2021.

/s/
George L. Russell, III
United States District Judge
